IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB SMITH,<br><br>Plaintiff,<br><br>v.<br><br>ALLIED UNIVERSAL and VISTRA CORP.,<br><br>Defendants. | CIVIL ACTION NO. 2:26-cv-470<br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

## I. PRELIMINARY STATEMENT

Plaintiff, Jacob Smith, seeks lost wages and benefits, liquidated damages, costs, and attorney's fees because Defendants Allied Universal and Vistra Corp. retaliated against him after he took protected leave to care for his spouse with a serious health condition, and because Defendant Vistra Corp. interfered with his rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. Plaintiff also seeks lost wages and benefits, compensatory and punitive damages, costs, and attorney's fees because Defendants refused to hire him and otherwise discriminated against him because of his association with an individual with a disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

## II. JURISDICTION

1. This Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts

constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

3. On May 13, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Defendants, which was dual filed with the Pennsylvania Human Relations Commission. On March 20, 2026, the EEOC issued a Notice of Right to Sue.[1]

## III. PARTIES

4. Plaintiff, Jacob Smith ("Mr. Smith"), is an adult individual who resides in Beaver County, Pennsylvania. At the time of the incidents complained of in this lawsuit and presently, he was and is a citizen of the Commonwealth of Pennsylvania and the United States of America.

5. Defendant Allied Universal ("Allied"), a private security and staffing company, is headquartered at 161 Washington Street, Suite 600, Conshohocken, PA 19428.

6. Defendant Vistra Corp. ("Vistra"), a retail electricity and power generation company, is headquartered at 6555 Sierra Drive, Irving, TX 75039.

7. Defendants Allied Universal and Vistra Corp. are covered employers within the meaning of the Family and Medical Leave Act because each employed fifty or more employees for each working day during twenty or more calendar weeks in the current or preceding calendar year.

8. Defendants Allied Universal and Vistra Corp. are covered employers within the meaning of the Americans with Disabilities Act because each employed fifteen or more employees for each working day during twenty or more calendar weeks in the current or preceding calendar year.

[1] Once the administrative requirements have been exhausted, Plaintiff intends to amend this Complaint to include three additional counts under the PHRA.

## IV. STATEMENT OF CLAIM

9. Mr. Smith worked at the Beaver Valley Nuclear Power Station ("Beaver Valley") for 21 years as a Nuclear Security Officer.

10. Prior to Mr. Smith's termination, his employer was Paragon Systems ("Paragon").

11. Vistra owns Beaver Valley and operated as Mr. Smith's joint employer, as demonstrated by the following:

- Vistra supervisors exercised direct oversight of Mr. Smith's work, including observing his performance, conducting oversight tours, and directing security personnel during plant operations.
- Vistra personnel frequently directed Mr. Smith's day-to-day duties, including determining security assignments, altering posts during shifts, and providing operational instructions that he was required to follow.
- Mr. Smith was required to follow Vistra's facility-specific security procedures, safety protocols, and operational directives while performing his job duties at the facility.
- Vistra issued and controlled Mr. Smith's site access credentials and possessed the authority to revoke his access to the facility, which would effectively end his employment at the site.
- Mr. Smith performed his duties using equipment and materials supplied and controlled by Vistra at the facility.
- Vistra personnel provided Mr. Smith with facility-specific training, including safety training and instruction on Vistra's security procedures and operational protocols that governed how he performed his duties at the facility.

- Vistra supervisors had authority to direct Paragon supervisors to discipline security officers, like Mr. Smith, if Vistra determined their performance did not comply with plant procedures or operational expectations.

12. During Mr. Smith's tenure at Beaver Valley, he used intermittent FMLA leave to care for his disabled wife.

13. In 2024, Mr. Smith used approximately 18 days of FMLA leave.

14. Vistra management was aware that Mr. Smith was requesting and taking FMLA leave to care for his wife.

15. In August 2024, Mr. Smith learned that Allied was going to replace Paragon as the security provider for Beaver Valley.

16. As part of that takeover, Mr. Smith submitted a job application to Allied to retain his position.

17. During his interview with Allied, Mr. Smith discussed his need to care for his disabled wife by using FMLA leave.

18. Mr. Smith then received a job offer from Allied to continue his work as a Nuclear Security Officer at Beaver Valley.

19. Then, on November 15, 2024, Allied revoked Mr. Smith's job offer by claiming that he was not a "good fit."

20. When Allied's assumption of Paragon's workforce is examined, it is clear that Mr. Smith was not a "good fit" due to his association with a disabled individual and his use of FMLA.

21. In taking over security operations for Beaver Valley, Allied retained Paragon's workforce but excluded Mr. Smith and Eric Mills, another Nuclear Security Officer who used FMLA to care for his disabled wife.

22. That move is significant because Allied hired from Paragon comparators who, upon information and belief, have a fraction of the experience possessed by Mr. Smith, including Raymond Ward and William Theiss.

23. Additionally, upon information and belief, both Mr. Ward and Mr. Theiss had documented disciplinary issues.

24. On December 1, 2024, Mr. Smith's employment officially ended with the transition from Paragon to Allied.

25. Further, following its revocation of Mr. Smith's job offer, Allied advertised job openings for nuclear security officers at Beaver Valley that did not require any experience in the industry—further evidence of its discrimination and retaliation against Mr. Smith.

26. Mr. Smith applied for those open positions following Allied's revocation of his offer and never received a response.

27. Allied made the decision to refuse to hire Mr. Smith in conjunction with Vistra.

28. Vistra's management at Beaver Valley, including George Fidurski and John Sharpless, were hostile to employees' use of medical leaves.

29. Mr. Tully (first name unknown), a former Project Manager for Paragon, worked with Mr. Fidurski to flag and remove security staff with FMLA, including Jeremy Covalt, Dave Haddox, and Mr. Hodgen (first name unknown).

30. Mr. Covalt and Mr. Haddox, who each used FMLA for chronic migraines, warned Mr. Smith of Vistra's hostility towards FMLA usage after a physician contracted by Vistra to perform their annual physical exams expressed concerns to each of them about how their migraines might affect their work if they couldn't be controlled.

31. The security staff was aware that employees with FMLA were being targeted for

termination because FMLA attendance was posted on the schedule for everyone to view.

32. This hostility led to the revocation of Mr. Smith's offer with Allied.

## V. CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF FMLA – INTERFERENCE (VISTRA)

33. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

34. At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2).

35. At all relevant times, Vistra was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

36. It is unlawful for employers to interfere with, restrain, or deny the exercise of rights protected under the FMLA. 29 U.S.C. § 2615(a)(1).

37. Vistra interfered with Plaintiff's FMLA rights by using Plaintiff's protected leave as a negative factor in decisions affecting his continued employment at Beaver Valley, including causing the revocation of his job offer and preventing his reinstatement to his position under the successor contractor.

38. Vistra acted willfully and not in good faith.

39. As a direct and proximate result of Vistra's actions, Plaintiff has suffered and continues to suffer damages.

### COUNT II – VIOLATION OF FMLA – RETALIATION (ALL DEFENDANTS)

40. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

41. At all relevant times, Plaintiff was an "eligible employee" within the meaning of

the FMLA, 29 U.S.C. § 2611(2).

42. It is unlawful for employers to discharge, refuse to hire, or otherwise discriminate against an employee for exercising rights protected by the FMLA, 29 U.S.C. § 2615(a)(2).

43. Plaintiff engaged in protected activity by requesting and taking FMLA leave to care for his disabled wife.

44. Defendants then retaliated against Plaintiff by revoking his job offer and refusing to hire him. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages.

**COUNT III – VIOLATION OF ADA – ASSOCIATIONAL DISCRIMINATION (ALL DEFENDANTS)**

45. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

46. The ADA prohibits employers from discriminating against a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association. 42 U.S.C. § 12112(b)(4).

47. Plaintiff's wife is an individual with a disability within the meaning of the ADA.

48. Defendants were aware of Plaintiff's association with his disabled wife.

49. Defendants discriminated against Plaintiff by revoking his job offer and refusing to hire him because of his association with an individual with a disability.

50. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jacob Smith, respectfully requests that this Honorable Court will:

(a) Assume jurisdiction herein;

(b) Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c) Award Plaintiff wage loss damages, including back pay, front pay, and lost future earnings, damages associated with the increased tax burden of any award, and lost fringe and other benefits of employment;

(d) Award Plaintiff compensatory damages under the ADA;

(e) Award Plaintiff punitive damages under the ADA;

(f) Award Plaintiff liquidated damages under the FMLA;

(g) Award Plaintiff pre- and post-judgment interest;

(h) Award Plaintiff costs and attorney's fees; and

(i) Grant such other relief as the Court deems just and appropriate.

**JURY TRIAL DEMANDED**

Respectfully submitted,

/s/ *Nicholas W. Kennedy*

Nicholas W. Kennedy, Esq. (Pa. 317386)

Kennedy Law, LLC
245 Fort Pitt Blvd
Pittsburgh, PA 15222
(412) 212-6465
nicholas@kennedylawpgh.com
*Attorney for Plaintiff, Jacob Smith*